UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHORELINE GROWERS, INC.,

    Plaintiff,                                        Hon. Ellen S. Carmody

v.                                                  Case No. 1:16-cv-1124

NEW HAMPSHIRE
INSURANCE COMAPNY,

    Defendant.
_____/

## OPINION

This matter is before the Court on Plaintiff's Motion for Summary Judgment, (ECF No. 20), and Defendant's Motion for Summary Judgment, (ECF No. 22). The parties have consented to proceed in this Court for all further proceedings, including trial and an order of final judgment. 28 U.S.C. § 636(c)(1). By Order of Reference, the Honorable Janet T. Neff referred this case to the undersigned. For the reasons discussed herein, Plaintiff's Motion for Summary Judgment, (ECF No. 20), is **granted** and Defendant's Motion for Summary Judgment, (ECF No. 22), is **denied**.

## BACKGROUND

Plaintiff operates approximately 300 greenhouses at its Hudsonville, Michigan facility. Each greenhouse utilizes two blower fans to circulate air and prevent the plants therein from overheating. On Sunday, April 17, 2016, electric power to thirty-one (31) greenhouses was interrupted preventing the blower fans from operating. As a result, the temperatures in the greenhouses increased significantly causing the destruction of 61,326 ornamental plants and flowers

causing Plaintiff $236,811.02 in damages.[1] Plaintiff filed a claim for this loss, but Defendant denied the claim instead agreeing to pay Plaintiff only five thousand dollars in "spoilage" coverage. Plaintiff initiated this action on September 13, 2016, alleging a single cause of action, a breach of contract premised upon Defendant's failure to indemnify Plaintiff for the loss in question. The parties now each move for summary judgment. The parties have not identified any material facts which are in dispute. Instead, the present dispute simply concerns which provisions of the relevant insurance contract apply to Plaintiff's circumstance and how should such provisions be interpreted.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party demonstrates that "there is an absence of evidence to support the nonmoving party's case," the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006).

While the Court must view the evidence in the light most favorable to the non-moving party, the party opposing the summary judgment motion "must do more than simply show

---

[1] Defendant conceded at hearing that this amount represents an accurate calculation of Plaintiff's loss in this matter. Defendant likewise does not dispute that the policy's coverage limits for this type of loss are sufficient to compensate for the loss in question.

that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005). The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility considerations." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004). Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Id.* at 353-54. In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735.

While a moving party without the burden of proof need only show that the opponent cannot sustain his burden at trial, a moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). Where the moving party has the burden, the plaintiff on a claim for relief or the defendant on an affirmative defense, "his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record

contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561. Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

## ANALYSIS

I.          **Michigan Contract Law**

As the parties do not dispute that there exists complete diversity of citizenship in this matter and the amount in controversy exceeds $75,000, the Court has subject matter over the present dispute. *See* 28 U.S.C. § 1332(a)(1). When presiding over a diversity action, federal courts must apply the choice of law rules of the state in which the court sits. *See Mill's Pride, Inc. v. Continental Ins. Co.*, 300 F.3d 701, 704 (6th Cir. 2002). Michigan's choice of law rules indicate that Michigan substantive law applies in this matter, *see, e.g., Chrysler v. Skyline Industrial Services, Inc.*, 528 N.W.2d 698 (Mich. 1995), a determination with which the parties agree. Accordingly, the Court will apply Michigan substantive law in resolving the present dispute. The relevant Michigan law was recently reiterated by the Michigan Supreme Court:

> An insurance policy is similar to any other contractual agreement, and, thus, the court's role is to "determine what the agreement was and effectuate the intent of the parties." "[W]e employ a two-part analysis" to determine the parties' intent. First, it must be determined whether "the policy provides coverage to the insured," and, second, the court must "ascertain whether that coverage is negated by an exclusion." While "[i]t is the insured's burden to establish that his claim falls within the terms of the policy," "[t]he insurer should bear the burden of proving an absence of coverage." Additionally, "[e]xclusionary clauses in insurance policies are strictly construed in favor of the insured." However, "[i]t is impossible to hold an

> insurance company liable for a risk it did not assume," and, thus,
> "[c]lear and specific exclusions must be enforced."

*Hunt v. Drielick*, 852 N.W.2d 562, 565-66 (Mich. 2014) (internal citations omitted); *see also, Tabernacle-The New Testament Church v. State Farm Fire and Casualty Co.*, 616 Fed. Appx. 802, 807-08 (June 22, 2015) (applying Michigan contract law).

**II.     Analysis**

   A.   Plaintiff's Loss is Covered under the Insurance Contract

The insurance contract, in its Agribusiness Property and Income Coverage Part, provides that Defendant will "cover risks of direct physical loss to covered property unless the loss is limited or caused by a peril that is excluded." (ECF No. 21-1 at PageID.298). The contract does not identify the perils which are encompassed therein, but instead defines the many "perils excluded" from coverage. (ECF No. 21-1 at PageID.298-303). Thus, any peril is a "covered peril" unless there exists in the contract an applicable exclusion.

The contract also contains a "Greenhouse and Nursery" Endorsement which provides "Limited Coverage for Growing Stock." (ECF No. 21-1 at PageId.321). This endorsement "modifies insurance provided under" the "Agribusiness Property and Income Coverage Part." (ECF No. 21-1 at PageID.321). Plaintiff argues that the loss it incurred is covered by this Growing Stock endorsement. Defendant concedes that "the plants involved in the Loss are 'growing stock' under the Endorsement." (ECF No. 27 at PageID.650). However, Defendant argues that the contract's

Temperature/Humidity exclusion operates to deny coverage.[2] Defendant argues that Plaintiff's loss is instead covered under the contract's supplemental "spoilage" coverage.

---

[2] Defendant also suggested in its pleadings that the Utility Failure exclusion also applied to deny coverage. At hearing, however, Defendant conceded that it was not relying on the Utility Failure exclusion to deny coverage.

B. Plaintiff's Coverage is not Negated by a Coverage Exclusion

Defendant argues that Plaintiff's loss is excluded from coverage by the Temperature/Humidity exclusion which provides, in relevant part, as follows:

> s. Temperature/Humidity - "We" do not pay for loss to personal property or stock, in either an exterior or interior environment, caused by humidity or changes in or extremes of temperature.

(ECF No. 21-1 at PageID.302-03).

Plaintiff argues that this exclusion is inapplicable because the plants and flowers that were lost are not properly characterized as *stock*, but instead constitute *growing stock* expressly covered under the Growing Stock Endorsement.

With respect to the definition of "stock," the policy provides:

> STOCK
>
> Other than property that is specifically scheduled and property that is specifically excluded by entry on the "declarations", this means "your" stock, while at a "covered location" or within 1,000 feet of a "covered location", including:
>
> 1. grain, seed, and other agricultural products;
>
> 2. raw materials;
>
> 3. goods in process and finished goods;
>
> 4. goods held in storage or for sale;
>
> 5. stock of others. This means stock of others that is in "your" care, custody, or control; and
>
> 6. supplies used in packing or shipping.

(ECF No. 21-1 at PageID.280-81).

The Growing Stock Endorsement defines growing stock thusly:

1. "Growing stock" means "horticultural products" under protected cultivation, held in storage or held for sale, but only if cultivated, stored or held for sale inside "your" greenhouses, or other buildings or structures that are located as a "covered location."

2. "Horticultural products" includes, but is not limited to:

    a. Trees, bushes, shrubs, turf and ornamental grasses cultivated and produced for use in landscaping or for establishing fruit orchards or other crop production units;

    b. Ornamental plants, including flowers, bedding plants, interior foliage plants or landscape plants.

(ECF No. 21-1 at PageID.321).

The flowers and plants in question clearly fall within the definition of "growing stock." As previously noted, Defendant concedes that "the plants involved in the Loss are 'growing stock' under the Endorsement." However, Defendant disputes that "stock" and "growing stock" are separate and distinct categories. Instead, Defendant asserts that "growing stock" is a "subcategory of 'stock.'" (ECF No. 27 at PageID.650). In support of this interpretation, Defendant cites to the following language of the Growing Stock Endorsement:

> b. This Supplemental Coverage for Growing Stock is part of and not in addition to the applicable "limit"[3] for coverage described as stock under Property Covered.

---

[3] The policy defines "limit" as "the amount of coverage that applies." (ECF No. 21-1 at PageID.277).

(ECF No. 21-1 at PageID.322).

In the Court's estimation, this language does nothing more than define or articulate the coverage limits for recovery to loss of growing stock. Whether "growing stock" is a category separate from "stock" or instead merely a subcategory thereof is simply not apparent from this language. Furthermore, as Plaintiff notes, a subsequent provision of the Growing Stock Endorsement explicitly distinguishes between "stock" and "growing stock." Specifically, the Growing Stock Endorsement modifies the contract's "Rain, Snow, Ice or Sleet" exclusion to provide that Defendant "do[es] not pay for loss to personal property, stock or 'growing stock' caused by rain, snow, ice, or sleet." (ECF No. 21-1 at PageID322). This language indicates that Defendant perceived a distinction between "stock" and "growing stock."

Defendant counters that this argument "ignores the purpose for addressing 'growing stock' in the modified version of the Rain, Snow, Ice, or Sleet exclusion found in the Endorsement." (ECF No. 27 at PageID.651). According to Defendant, "[i]f the Endorsement had not substituted a modified version, the insured would not have coverage for loss from rain, snow, ice or sleet to its 'growing stock' outside the greenhouse under any circumstance." (ECF No. 27 at PageID.651-52). This latter statement, however, actually supports Plaintiff's argument.

The primary Rain, Snow, Ice, or Sleet exclusion contained in the insurance contract provides:

> o.  Rain, Snow, Ice, or Sleet - "We" do not pay for loss
>     to personal property or stock caused by rain, snow,
>     ice, or sleet:
>
>     1)  while the property is in the open; or
>
>     2)  while the property is covered by tarpaulins or other temporary coverings in the open.

(ECF No. 21-1 at PageID.302).

As noted above, the Growing Stock Endorsement modifies this provision by adding "growing stock" to the items which are not covered by loss due to rain, snow, ice, or sleet. However, if "growing stock" were merely a subset of "stock," as Defendant alleges, this modification would be completely unnecessary as the primary Rain, Snow, Ice, or Sleet exclusion already applies to "stock." The modification articulated in the Growing Stock Endorsement makes sense only if "growing stock" is a category separate and distinct from "stock," rather than a mere subset thereof. Simply put, Defendant's interpretation is contrary to the contract's plain language. As noted above, exclusionary clauses "are strictly construed in favor of the insured" and Defendant bears "the burden of proving an absence of coverage." Defendant has failed to satisfy its burden in this regard. Accordingly, the Court finds that Defendant's reliance on the Temperature/Humidity exclusion to deny coverage in this circumstance is contrary to the plain terms of the insurance contract. Finally, because Defendant has failed to identify an applicable exclusion to coverage, the Court need not address the applicability of the contract's supplemental coverage for loss due to spoilage. Plaintiff's motion for summary judgment is, therefore, **granted** and Defendant's motion for summary judgment is, therefore, **denied**. A Judgment consistent with this Opinion will enter.

Date: August 30, 2017  /s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge